Ltd. and others. Argument is not to exceed 15 minutes per side. Mr. Doucette, for the appellants. Thank you. Thank you, Your Honors. Good morning. My name is Troy Doucette from Doucette & Associates on behalf of the appellants, the Lesters. Your Honors, I'd like to begin with the whether or not we, my clients, waive the sexual limitations argument with respect to the Truth in Lending Act before this court. I think there's four points I'd like to make to the court on that first. The brief in opposition of the defendant's motion for summary judgment included a section where briefly we had argued, the Lesters argued, that their Truth in Lending Act claim was timely, possibly articulately, but was argued in the law and argument section at C3. It their motion for summary judgment revolved around whether Ms. Hartzler knew of the lawsuit which we would submit was legally resolved when the district court granted us motion for leave to file our amended complaint. That by allowing the 15C regarding her, that then the issue of whether or not she knew or not had been resolved. Krupski supports that. I think the syllabus at B pretty succinctly states that once a 15C relation back is mandated, then there's no equitable discretion left for the court. So we would argue that it was plain error for the court to rely on that piece of the argument. I'm just mystified by this. Because a court grants a motion to amend, to allow somebody to amend the complaint, therefore a proposition's been established? Well, it was significantly argued. The motion for leave to amend, and I'm sorry, not the motion for leave, well it was motion for leave to amend, and then also the motion to dismiss on the issue of the 15C, whether or not we were able to bring in parties, was resolved. So the court allowed us... So if you're allowed to amend a complaint or a motion to dismiss is denied, then you win on either legal conclusions or factual assertions? How can that possibly be true? Well, no, not on the underlying legal conclusions. The issue is the statute of limitations. So the issue is whether or not the Truth in Lending Act statute of limitations applied or did not apply to bar our claim against at least one, really all the defendants, but at least the surviving defendant at the motion for summary judgment stage. And what we're submitting is we argued that the statute of limitations had not passed, and the argument before the court is we can't even say that to this court because it had been waived. So I'm not necessarily going back as to whether or not the statute of limitations, but I'm just articulating a reason why that I am able to stand here today and argue that the statute of limitations issue is not a waived matter before this particular court. So I think it would be helpful for me to maybe talk a little bit about the 15C issue and whether or not we should have been able to bring in these other parties, and I think that we should have. The Supreme Court in the Krupski decision came out and said that a plaintiff who sues a particular entity and was mistaken about who that entity was can then substitute in another     And we're not going to allow for the true party in interest or whoever was the wrongdoer. This court has come out with some decisions since then that sort of curb that to some degree and say, well, we'll allow a one-for-one transfer substitution, but we're not going to allow new parties to come in. And that's really what Magistrate Kemp came to in his decision that was adopted by the district court, that the Sixth Circuit has this sort of split off from the Supreme Court's decision in Krupski, and because of that, we were significantly limited on who we were able to sue, who we were able to bring the action against. Counsel, all of the stuff about 15C and about alter ego and so on, does any of that impact the merits here? In other words, if it were determined that you lose on the merits against the people that you did sue, do those other arguments make any difference? I mean, I understand that if you sue X and they don't have any money, you want to sue Y, but if you don't win on some merit somewhere, does any of that make any difference? No. Okay. And that's why I really bring up the issue of TILA, because we have the warranty issues. I think we recognize since the briefing how the commercial consumer transaction statute might not apply, so we're really left with the warranty arguments. I think those are pretty fact-specific, what's been before the court on the briefing. I think the real key for us is the Truth in Lending Act claim, and whether or not that can – all of them are important to us. I mean, I certainly – I'd be happy to argue about the warranty-related issues also, but – The Truth in Lending Act claim basically – correct me if I'm wrong – is that certain charges, fees, should have been counted as finance charges, the documentation fee, the profit on the warranty. Yes, Your Honor. Okay. And – We never got to those merits, so whether or not we'd win on those – So you did not bring those against whichever – the company, the WOW that you did sue? I mean, is there any reason you didn't then, that if that's only time barred? Well, the – I guess I thought that you did raise them against somebody, and it was just time barred as to the later people. Am I wrong? Yes. So we were defending their motion for summary judgment. So as part of their motion for summary judgment, they argued Truth in Lending Act doesn't apply, and we argued, yes, it does. You've got some pretty clear violations. There was a lot of discovery disputes going on in the background that the magistrate was heavily involved with, the district court was not. So the – so by the time that we got to the summary judgment piece of it, we were just defending. Well, the district court comes out and doesn't articulate a decision on the merits of the Truth in Lending Act claim, instead finding just that the statute of limitations had passed, therefore we lose. So I would be happy to talk about the merits of that TILA claim and where that goes, but the decision that I'm left with before this court is that we didn't even get into all that because the court found that our statute of limitations had passed. We weren't actually able to bring it at all. I'm sorry. Go ahead. I'm confused about it again. Help me here. You bought the car in March of 2011. In August of 2011, you filed a suit against WOW, Columbus Finance, and Coast to Coast. Was there a TILA claim in that complaint? No. Okay. So in that sense, the judge – Well, no, because – And you do need the relation back in order to resurrect that claim. That's why I asked you earlier, did it make any difference? And you said no, but the answer is that for the TILA claim, it does make a difference. I see. I misunderstand your question. I apologize. Yes, it does make a difference. I thought you were asking in regards to all the other defendants. Does it make a difference with everybody else? Not really, because if we nick one of them, then liability will flow. Here it's because you didn't raise that claim in the original complaint. Absolutely correct. Yes, Your Honor. Well, let's go to the warranty, because at least that one for me is a little more interesting. As I glean from this, you did sue Coast to Coast, but then you dropped it. It wasn't quite clear whether that was settled or dropped. I think it said there was a settlement with Columbus Finance, but not with Coast to Coast, because they seem to be the biggest villain here, at least on the facts as alleged. Well, I don't think so. That contract, it's before the court. I think it's eight pages long. It includes so many exclusions that we ultimately determined outside of the litigation that there was no claim against Coast to Coast because of the exclusions associated with that contract. Basically, there's a piece of junk. There's very few instances that we envision where somebody would actually be able to substantiate a warranty claim the way that thing was written. So what we have is we've got a dealer selling a $5,500 car. It's sometimes called a zebras at high noon contract. You only collect if you're trampled by zebras at high noon. I suppose. But what we have is we have a $5,500 car. We have a warranty. It was $1,500. Thirty percent of the car sold to a young couple starting out in life without college educations. He's delivering pizzas to make ends meet. They put $1,700 down to buy this thing. If he's making a couple thousand dollars a month, it represents a substantial amount of money. There's representations made to my clients. There's representations made specifically in that contract. In that contract, you're saying the representation, as I read it, what he signs says, I reviewed all of this, and the selling dealer has made no representations outside of this agreement. And that's the part that he signed. Well, we've got two. But there's another signature, and that's on. I see that right next to it. Where the dealership is saying this car is in great condition. We also have that dealer then sending a form to the warranty company saying this car is in great condition. We've got promises made during the sale transaction that say this car is in great condition. This engine works. As far as a warranty is concerned, even if the as-is piece of it applies to everything else, they made specific representations about the engine. If they do that during the sales transaction, then it falls under the gambit of an actual warranty, whether it's implied or whether that becomes express. That's outside of the as-is statement. I think we've cited some Ohio case law to that effect out of the 8th District, if I'm not mistaken. And the problem that happened, the car blew up six days after he drives it off the lot, it's leaking a couple of quarts a day, all deal with the engine. So whether we splice or dice it with the statement on the coast-to-coast contract or otherwise, or the statements they made as part of the sales, we'd argue those fall under the auspice of a warranty made to the client about the car. Under the auspice of, but not directly. I mean, the evidence in the record that you've just discussed with my colleague is indeed contract or the warranty as between coast-to-coast and WOW or Amy Hartzell, but not the plaintiffs, correct? Well, the contract is something that the clients, the lessors, looked at and they relied on. The promises, as soon as they say this car is in great condition, basically once they make an oral warranty, that's as direct as it gets. What supports all of that is then these documents that in the documents they say this car is terrific. I think that the court should be very cautious about saying, because that contract was shipped off to a third party, all of a sudden anything that says into that the client doesn't, the customer doesn't have any obligation to rely on. Because what's going to happen is that we're going to have contracts that have all kinds of terrific language that say terrific things about a car, and yet as soon as it's shipped up, if it's sent to somebody else and all that stuff doesn't matter. So I see my time has expired. Thank you. Remaining time for rebuttal. Good morning. May it please the court. Joel Seckler of Carpenter, Lipson, Leland on behalf of the Appalese. If I may, I'd like to start out with kind of following along a question and a comment that Judge Boggs had made about WowLTD, which was the only original, which was the only defendant in the original complaint along with Coast to Coast. And the question Judge Boggs posed, if I understood it correctly, and I hope I did, was the title of claim would have been timely as to WowLTD because they were an original defendant and they were named in the complaint within one year of when the car was sold. And the reason that summary judgment was granted to WowLTD did not have to do with statute of limitations. That was our argument as to everybody else that was involved in the case for various reasons. The reason summary judgment was granted to WowLTD is because under TILA, it's the seller of the vehicle that's responsible for TILA violations. And the undisputed facts that came out in discovery, and it was a long and drawn-out process in discovery, but at the end of the day, the facts were that WowLTD was not the company that ever sold the car. WowLTD didn't even start operating until a year and a half after the car was sold. It was Amy Hartzler doing business as Wow Car Company, who is indisputably the entity that sold the car. And we raised the TILA claims, the statute of limitations claims as to her, because she was not sued within the one-year period. And Judge Sargas correctly determined that. I don't believe there's any real argument to be made that the plaintiffs raised statute of limitations as to our TILA defenses. The only mention of TILA in the plaintiffs' opposition to the summary judgment motion was that WowLTD has successor liability. For Amy Hartzler. And since Wow was sued in a timely fashion within one year, then automatically it has to be timely as to them. We cited a long string of case laws that know under successor liability, if the primary party, in this case Ms. Hartzler, if you're time-barred from bringing claims against her, you can't rope in a successor liability. To this day, there hasn't been any contrary authority cited by plaintiffs or their counsel to that. So the bottom line is any statute of limitations arguments that the plaintiffs may have had or may have wanted to assert or may have wished they would have asserted in front of the district court, they simply just did not do that. And they can't raise it now for the first time, which is what they're trying to do. I want to jump to the express warranty claims because there's an important part to be made about this. What the Lesters are relying on is they're saying that in this contract, between where Ms. Hartzler's company represented to Coast to Coast that the car was in good condition, that that constitutes an express warranty from which they can benefit. And that's simply not the case. Ohio law is clear that for an affirmation of fact about a product to constitute an express warranty, it has to be made by the seller to the buyer. That's subsection 1 of 1302.26, is that right? That is correct, Judge Boggs. And the undisputed fact in this case is that the only affirmation of fact that the Lesters, the plaintiffs, are relying on is an affirmation of fact, to the extent you want to characterize it as that, that was not made to the Lesters. It was made to Coast to Coast, the company that ultimately issued the service contract. Now, there's been another argument that was raised on appeal, that that statement in the service contract also constituted a description of goods, which can constitute an express warranty, and that's under 1326, the second paragraph. And the problem with that argument, first and foremost, is the same problem with the Tyler arguments the plaintiffs are trying to raise here. They never raised this argument that that statement constituted a description of goods, ever. It never came out in any pleadings, any documents. It wasn't in their opposition to our summary judgment motion. That's section sub 2, so you're saying they did raise sub 1 but not sub 2. That's correct, Judge Boggs. With respect to sub 1, I guess that when you say a promise made by the seller to the buyer and which becomes part of the basis of the bargain, and my question here is if this were, in fact, if this box on the first page of Exhibit 1, if that were in the back of the contract or something of that sort, I wouldn't have any problem at all. The problem I do have is that there do seem to be good allegations that they said, here's the car, you need a warranty. They present the warranty. He signs on one side. Right opposite, you know, directly on the next line, is the part where the selling dealer certifies that it's in good condition. It's certainly not at all clear that that's made to somebody else. It's on the same piece of paper. So is your real defense here the part where they say, well, we didn't read it and we didn't know about it? In other words, if I had been looking at this and said, hey, you just said that this vehicle is in good condition. Is that right? And if Amy says yes, then would they have a case? Yes. To answer your question directly, yes, Your Honor. I think that would be a different situation in terms of is there a fact dispute that needs to be resolved at trial. But my first point would be I understand what you're saying about it's right there on the first page versus it's on page 9. But as a practical matter, reading the statute the way that it's read, I don't believe it does matter what page it's on. What matters is, is the representation being made by the seller to the buyer or is it being made by the seller to somebody else? And if it's being made by the seller to somebody else, then it's not an express warranty. But also to your point, assuming I'm wrong about that and the statute doesn't say what I believe it says, the fact of the matter is that at the time they bought the car, there's no evidence in the record that either of the Lesters looked at that statement about the car being in good condition. There's no evidence that they read the document. In fact, what Mr. Lester told me in his deposition, which is in the record, is that he didn't even skim through the document until after they started having trouble with the car. And the parts that he skimmed, he went to the exclusion sections. He was looking to try to find what problems with the car might not be subject to the service contract. Even when he was skimming after the fact, he didn't look at the first page or the representations that were made. He was looking at other parts of the contract. The vehicle purchase contract is strictly as-is. Is that correct? It is, Your Honor. Though I will concede, Ohio law does say that an as-is disclosure, like the one that Amy gave to the Lesters, that covers any implied warranties. But if Amy had made express warranties subsequent to that... They were overridden by that. Right. And I concede that. The moral of the story is that if you read it, you said, Is this right? Then Amy would have either had to fish or cut bait. I think that may be true. But the bottom line is that is not the facts of our case. The facts of our case are not the Lesters. As they went and signed the service contract, didn't look at the signature from Amy's finance manager, say, Oh, you're saying this is in good condition. You're guaranteeing this car is in good condition. That factually never happened. And that would be a different case, and maybe a case that the plaintiffs do get to a jury in a case like that. But that's not our case. The other thing I did want to briefly make clear, too, and I wanted to make sure there was no confusion on the record in the briefs, there could be some implication that, to the extent there's any implication that Amy, my client, knew there was something wrong with this car, that's not the case. There's no facts to support that. In fact, should the case have proceeded to trial, the plaintiffs were planning on using an expert from coast to coast, the service contract company who they've conveniently claimed there's no possible way they could sue them, even though they've sued pretty much anyone affiliated with any of my clients they could possibly find. But he said that this was a latent defect issue, that what he believes was wrong with the engine. He said, literally, unless you took the car apart, the engine apart, took it apart piece by piece and knew exactly what you were looking for, that there's no way you would know there was anything wrong with this car. There's no evidence that it was operating or behaving strangely at any point prior to the time it was sold. And so I just wanted to make sure the record is clear, that not only was Ms. Hartzler, Amy, the only one who actually sold the vehicle that she nor anyone else knew or had any reason to know that to the extent there was something wrong with it, there was something wrong with it. Maybe this is just in the weeds of litigation, but from your side do you have any indication why they didn't go after coast to coast, or do you say that indeed this is a pretty crappy warranty? Honestly, I will be completely honest, Your Honor. I have not gone through the service contract with a fine-tooth comb. I have no personal or professional opinions on the contract or its exclusions. I confess I haven't read it word for word, because it really was not an issue for me or my clients. It's not their contract. It's not their responsibility to honor it or refuse to honor it for whatever reason. I will say that my clients have, it's been a point of a little bit of resentment for them, that they feel like they've been made to be the bad guys, where if there is a bad guy in this, it's coast to coast, and they seem to be getting off without feeling any of the plaintiff's vitriol. But honestly, I have not read it and have no opinions on it. I'll be honest with you. May I ask you to be honest with us about at least one other point? Sure. Just taking you back a moment to the relation back or the 15C inquiry, if I understood you, you said, look, Amy sold the car not while limited, pardon me, while LTD. LTD, yeah. And because of that, you believe that there was no relation back issue. But I just want for a moment you to talk about the Krupsky focus that requires that it not be plaintiff's knowledge, but whether or not the defendants knew that they were the likely targets, but for some mistake. Can you reveal, I mean, what the record, if more closely studied would show, it would appear that while limited should have known that it, rather than Amy Hartzler, Hartzler's while would have been the correct target. And that would make the repose unjust. Well, let me briefly start answering that by going in a different direction. And you're right. What Krupsky says is that it's what the plaintiff knew or didn't know, what the defendant might have thought about that is the key question. But what Cox and Ham and other precedent from this circuit has held since it doesn't change the fact that, first and foremost, the failure to name the party, the failure by the plaintiff to name the party in a timely fashion still has to be a mistake. Regardless of what the plaintiff knew or what the defendant knew, the ultimate question is, did the plaintiff make a mistake in not naming the right party within the statute of limitations? And this circuit has consistently said, even after Krupsky, that it still means absence of knowledge is not a mistake. And the simple fact of the matter here is, is regardless of what Ms. Hartzler may or may not have known, and I honestly don't know the answer of when she knew things. I don't. And it's not in the record, and I'll be honest. I don't know when she knew things. But the fact of the matter is, is that this case was filed in August of 2011. And between that time and when the title of statute of limitations passed the following March of 2012, no discovery was taken, no written discovery was served, no depositions were taken. There were no affirmative steps by plaintiffs or their counsel to find out, hey, did I sue the right party? Are there other people involved? Are there other people who may be alter egos or secondarily liable? They filed a lawsuit, let it sit for seven months, indeed let it sit for another seven months until September of 2012, before they even served interrogatories or document requests. And in that situation, that's classic absence of knowledge is not a mistake. Filing a lawsuit and not being aggressive in finding out, through the discovery mechanisms afforded to you, whether or not you've actually sued the right party, doesn't get you to the level of a mistake. And if you don't get to the level of a mistake, then you don't get to all the other elements of 15C. That's where the analysis ends. You haven't made a mistake, you just decided to be the ostrich and put your head in the sand, and so you can't take advantage of 15C, regardless of what the defendant or potential other defendants may or may not have known and when about the lawsuit, even if they weren't sued. But more directly to your point, there's no evidence in the record that Ms. Harsler knew about this lawsuit within the Rule 4M period. There's nothing whatsoever. They've implied, oh, she and the owner of WOW Ltd., they were dating, they had business relationships together, and those allegations in general are true, I will admit that. But what's not in the record is whether they were dating, whether they had these business relationships within the 4M period. There were times over the last five years that they dated and had business relationships, but there's nothing in the record saying during the Rule 4M period they were engaged in the type of interaction that would impute WOW Ltd.'s knowledge to Amy Harsler. And I see my time is up unless the panel has further questions. I thank the Court for the time and opportunity. Thank you. Thank you, Your Honors. I believe the 26F conference had not been held yet, so I don't think we were able to obtain discovery for a significant amount of time, and I think the exact time periods are cited in our brief to that very argument that we sat on their rights, we otherwise not obtained discovery. This was a removal action from a state court lawsuit that was initially filed from a different firm. So this isn't a matter of somebody sitting on their rights, it's a matter of what we're left with as far as the rules of procedural. Were you saying that you weren't the one that filed the suit initially? My firm was not. That's correct. Another firm did, and we took over as soon as it was removed to federal court. Whose name is on the vehicle purchase contract? As far as my clients are concerned? Well, I mean, here we're talking about Amy and WOW and all that. I believe it's WOW Car Company. Different from WOW Ltd. Right. It is a mess, and it has been a mess, and this is one of the problems that gets into who's on first kind of thing. I'm still a little puzzled. We went around this once when you were up before. If you've got a contract with WOW Car Company and WOW Car Company's name is also on the VSA about the retaining of the... And you did sue WOW Car Company? Yeah. Then why wouldn't you have had a TILA claim against them that you put in the first time? I agree. Oh, the first time? Yeah. The previous firm wasn't aware of it. This is something that we do. Okay, so what you mean is that they didn't put the TILA claim in because they weren't great TILA lawyers, but you are a great TILA lawyer, and afterwards you decided to come in with it. Is that sort of fair representation? I don't want to quite represent what their knowledge of a TILA might be, but this is something where it also requires... There was nothing that obfuscated if they or you had wanted to bring a TILA claim within a year of the date of this. There was nothing that prevented you from doing it against WOW Car Company. Well, there is a discovery issue here because... You've got the contract. Well, the issue is the ultimate TILA claim that we've got is whether or not they retained portions of the finance charge or not, and that we didn't know until we got into discovery. So there is a TILA claim that we would have... My firm, not even doing this, would have a knowledge that we had one until we got into discovery. That has been a brutal process. In fact, we had a motion for spoilation of evidence. What about the documentation fee? I mean, that's a pretty standard TILA kind of attack, isn't it? Well, the documentation fee is also relying upon what they do in other transactions. So we would need to see all the transactions in order to substantiate that document fee, whether it actually should be considered a finance charge or not. Anything else for our judges? Thank you. Thank you. That case will be submitted.